798

Harry T. EDMUNDSON

v.

BOROUGH OF KENNETT SQUARE,
Robert F. Goddu, Kenneth Roberts, Herbert L. Waltz, and Albert J. McCarthy.

Civil No. 91–2618.

United States District Court,
E.D. Pennsylvania.

Sept. 10, 1992.

Jeffrey L. Pettit, Philadelphia, PA, for plaintiff.

Robert G. Hanna, Philadelphia, PA, for defendants.

## OPINION AND ORDER

DITTER, District Judge.

In this section 1983 action, plaintiff claims the defendants violated his First Amendment and due process rights when they discharged him. The defendants have moved for summary judgment. They argue the doctrines of collateral estoppel and res judicata bar plaintiff's First Amendment claim because he litigated the relevant issues before various state agencies and courts, received final decisions on the merits, and lost. The defendants further contend a pre-termination hearing provided appropriate due process. Having considered the parties' briefs, I will grant defendants' motion.

## I. BACKGROUND

Harry T. Edmundson was a police officer in the Borough of Kennett Square. In July, 1989, a police lieutenant directed him to make changes in a police report Edmundson had filed. Edmundson failed to do so. In August, 1989, Edmundson violated his chief's orders by not accompanying an inebriated, arrested person to the hospital.

Based on these two incidents, the chief of police notified Edmundson that Edmundson would be dismissed. On September 12, 1989, the mayor of Kennett Square, the president of the borough council, and a member of council, confronted Edmundson with the charges against him, gave him an opportunity to respond, and ultimately offered him the choice of resigning or being dismissed. Edmundson refused to resign.

On October 2, 1989, the borough council, acting on the mayor's recommendation, discharged Edmundson. In a letter dated the following day, the borough council explained Edmundson's termination was based on his (1) failure to "arrest, transport or accompany" an inebriated person to the Southern Chester County Medical Center; (2) failure to "properly investigate and prepare the proper report" concerning an attempted burglary; (3) failure to follow proper directives, orders, and procedures of the police department as set forth in various discrepancy reports; and (4) repeated violations of departmental rules and regulations.

After his termination, Edmundson applied for unemployment compensation, but the Pennsylvania Office of Employment Security denied his claim, concluding he had been discharged for wilful misconduct. Edmundson appealed to the Pennsylvania Unemployment Compensation Board of Review. After a full hearing, a board referee concluded the borough was justified in dismissing Edmundson as a result of his failing to comply with the directions of his superior officers, actions that were indicative of a disregard of his duties and obligations to his employer. The board affirmed the referee's decision. The Commonwealth Court of Pennsylvania also affirmed, holding Edmundson's disregard for his duties and obligations amounted to wilful misconduct. The Supreme Court of Pennsylvania refused to review.

Edmundson appealed his discharge to the Kennett Square Civil Service Commission. In affirming the termination, the civil service commission found Edmundson had been discharged for two incidents, neglect of duty and disobedience of orders, and three separate suspensions within the past two years as

well as numerous other discrepancy reports and disciplinary memos in his file. The commission concluded the "Borough was justified and warranted in terminating Edmundson from his position as a police officer."

Edmundson is now bringing this section 1983 action against the borough and the individual defendants in their personal and official capacity. He asserts he was fired in retaliation for exercising his First Amendment rights and claims the defendants deprived him of a property interest without due process. He bases these claims on the following events:

In December, 1988, Edmundson was accused of breaking into the police chief's office and suspended for one day. On March 1, 1989, and June 28, 1989, the *Chester County Press* published statements Edmundson made concerning his suspension and the associated hearings. These statements included:

> I was accused of [breaking into the police chief's office] at 11:00 pm at night, given a letter that I was going to be suspended and suspended that same night. So we have Judge, Jury, and Execution all in one shot.
> Out of all the amendments to the Constitution, I feel that he [the police chief] has at least bent most of them and just totally ignored the rest of them.

Directive MCC–11 of the Kennett Square Police Department Manual provides:

> Officers shall not publicly criticize or ridicule the Department, its policies, or other officers by speech, writing, or other expression, where such speech, writing or other expression is defamatory, obscene, unlawful, undermines the effectiveness of the Department, interferes with the maintenance of discipline, or is made with reckless disregard for the truth.

Article 1 of the Kennett Square Police Department Manual lists "publicly criticizing the official action of a superior official or Borough official" as "conduct unbecoming an officer."

Having learned of his statements, the borough concluded Edmundson had violated Directive MCC–11 and Article 1 of the police department manual. On July 10, 1989, the borough suspended Edmundson for three days.

Edmundson appealed his suspension to the borough's civil service commission. The commission held a hearing on September 5, 1989, and affirmed the suspension on September 28, 1989.

The commission concluded "MCC–11 is a valid and constitutional restriction of free speech," and that "Edmundson's actions constitute[d] a violation of MCC–11 and the Police Manual." Edmundson appealed this decision to the Chester County Court of Common Pleas, but then apparently abandoned the matter.

Although all the events relating to his statements about the police chief took place prior to Edmundson's discharge, throughout his pre and post-termination proceedings, he neither raised a claim of retaliation nor made any reference to the First Amendment. Understandably, none of the decisions regarding his termination addressed any First Amendment issue or retaliation claim.

The defendants have moved for summary judgment. First, the defendants claim prior proceedings have established Edmundson was fired for "wilful misconduct." Second, they contend the doctrine of collateral estoppel bars Edmundson's First Amendment claim. The defendants note the civil service commission held MCC–11 is a valid and constitutional limitation of an officer's right to speak, and that Edmundson's statements were not a matter of general public concern and interest. The defendants contend these proceedings preclude any consideration of Edmundson's First Amendment arguments.

Third, the defendants claim the dismissal proceedings provided due process.

## II.  ANALYSIS

### A.  Preclusion

The basic question in this case is whether Edmundson may litigate the reason for which he was discharged. I find he is precluded from doing so as a result of prior administrative agency decisions.

█ When considering preclusion questions,[1] a federal court must apply the Full Faith and Credit Statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as the adjudicating state would. This rule applies in section 1983 actions. *See Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988).

### 1. Issue Preclusion

*Frederick v. American Hardware Supply Co.,* 384 Pa.Super. 72, 557 A.2d 779, 780 (1989), sets out Pennsylvania's law of issue preclusion, formerly called collateral estoppel:

> [C]ollateral estoppel requires: (1) that the issue or issues of fact determined in a prior action be the same as those appearing in a subsequent action, there being no necessity that the cause of actions be the same, (2) that the party against whom the defense is invoked is identical to or in privity to the party in the first action, (3) the previous judgment be final on the merits, and (4) the party had a full and fair chance to litigate on the merits.

*Frederick* continues:

1. More recent cases refer to res judicata as claim preclusion and collateral estoppel as issue preclusion. The concepts are distinct. Claim preclusion gives dispositive effect to a prior decision if the particular issue, though not previously litigated, could have been raised. Issue preclusion bars subsequent litigation only of an issue that was identical to one decided in the prior action. *See Bradley v. Pittsburgh Board of Education,* 913 F.2d 1064, 1070 (3d Cir.1990).

2. *See also University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Kelley v. TYK Refractories Co.,* 860 F.2d 1188, 1193 (3d Cir.1988) ("When a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.").

   It may seem as though *Frederick* used the term "res judicata principles" improperly in this paragraph which discusses collateral estoppel. The fact is *Frederick* is correct. *See Patel v. Workmen's Compensation Appeal Board,* 88 Pa. Cmwlth. 76, 488 A.2d 1177, 1179 (1985) ("The generic term res judicata encompasses two separate doctrines: 'technical res judicata' and 'collateral estoppel.'").

Furthermore, the application of the principle of collateral estoppel is not precluded merely because administrative proceedings are involved. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the court will not hesitate to apply res judicata principles.[2]

█ Issue preclusion, or collateral estoppel, as described in *Frederick,* bars relitigation of the issue which forms the foundation for the present suit: the reason for Edmundson's termination. This matter was actually litigated twice, was essential to the prior decisions, and was one that Edmundson had a full and fair chance to contest. The Pennsylvania Unemployment Compensation Board of Review, affirmed by the Commonwealth Court, decided Edmundson was discharged for insubordination and neglect of duty.[3] The Kennett Square Borough Civil Service Commission determined Edmundson was discharged for neglect of official duty, insubordination, and an unsatisfactory work record.[4]

3. This is what the Board said: "In the instant case, the claimant failed to comply with the directions of his superior officers of the police department in Kennett Square and as a result he was dismissed.... The claimant on at least two occasions placed his own judgment ahead of the directions of his supervisor and as a result was dismissed.... The claimant's actions then were indicative of a disregard of his duties and obligations to his employer...." Referee's Decision, Pennsylvania Unemployment Compensation Board of Review, dated Nov. 22, 1989 (attached as Exhibit F–1 to Defendants' Motion for Summary Judgment).

   The Commonwealth Court affirmed, concluding that the Board's findings were supported by substantial evidence. The court pointed out that "Because Claimant's disregard for his duties and obligations owed to the Department amounted to wilful misconduct, we conclude that the Board's denial of benefits was sound." *Edmundson v. Unemployment Compensation Bd. of Review,* Pa.Commonwealth Court, unreported, attached as Exhibit F–2 to Defendant's Motion for Summary Judgment.

4. In Finding of Fact No. 2 the commission said: "Mr. Edmundson was terminated on the basis of (a) two (2) recent incidents in which he was charged with neglect of official duty and disobe-

802

The Unemployment Compensation Board's ultimate determination was that Edmundson was guilty of wilful misconduct as that term is used in the state's Unemployment Compensation Law. 43 P.S. § 751 et seq. That conclusion, of course, subsumed the issue raised by Edmundson in this law suit, i.e., the reason for his discharge. The board specifically found he was discharged for insubordination and neglect of duty.

The ultimate issue before the Kennett Square Borough Civil Service Commission was whether the borough was justified in discharging Edmundson from his position as a police officer. Subsumed in that issue was the reason for his discharge. The commission made a specific finding that Edmundson was terminated on the basis of insubordination, neglect of duty, and his poor disciplinary record. Edmundson's present contention that he was terminated because he made statements protected by the First Amendment flies in the face of a fact previously found by the commission to the contrary. Even if that were not fatal to Edmundson's cause, and it is, there is the commission's equally fatal finding that Edmundson's statements about the chief of police were not protected by the First Amendment.

■ Edmundson identifies only one set of statements as First Amendment activity—the comments published on March 1, 1989, and June 28, 1989. The civil service commission specifically held they violated MCC–11 and that MCC–11 was a valid constitutional

limitation on an officer's right to free speech. In short, there was a state ruling that the First Amendment did not protect Edmundson's assertions, the threshold issue in this case.[5] In addition, the ruling precludes any argument that when the Civil Service Commission referred to Edmundson's prior disciplinary record as one of the reasons for his discharge, it may have referred to protected activity.[6] The commission's judgment was final, decided the issue on the merits, and Edmundson had a full and fair opportunity to litigate it. There is no question the commission was acting in a judicial capacity and was resolving issues of fact and law properly before it.

If any doubts remained about whether the commission's decision is final and binding, Edmundson quelled them by appealing to the Chester County Court of Common Pleas and then abandoning his claim. This conduct shows Edmundson knew he could appeal, did so, and then decided to accept the commission's ruling concerning his First Amendment arguments.

2. Claim Preclusion

■ So far as I am concerned, the result is the same[7] if the matter is considered under the doctrine of claim preclusion, res judicata. Even though he had ample opportunity to do so, Edmundson never raised his First Amendment claim at the prior proceedings. Claim preclusion prevents a party

dience of orders; and (b) his prior transgressions resulting in three (3) separate suspensions within the past two years as well as numerous other discrepancy reports and disciplinary memos contained in his file." In Re: Appeal of Termination of Harry T. Edmundson, Kennett Sq. Borough Civil Service Comm., slip op. at 2, (undated) attached as Exhibit G to Defendant's Motion for Summary Judgment.

5. A quick comparison of the evidence shows just how directly the commission reached the issue in the § 1983 case. Edmundson's brief claims "the real reason for his [Edmundson's] termination" was "his speaking out on matters of public concern." The commission specifically held "Officer Edmundson's statements and criticisms were more of a personal charge by Officer Edmundson against the Chief and not a matter of general public concern and interest." (emphasis added).

6. Edmundson claims the commission's ruling that MCC–11 does not offend the First Amendment should not apply because it is based on a previous commission ruling, Appeal of Officer Martin Feliciano, rather than the facts of Edmundson's case. This argument is simply wrong. Following precedent is the heart of the system of stare decisis. To say that an opinion is invalid because it follows the logic of a previous decision is ludicrous.

7. Suit against the borough and the defendants in their official capacities would be terminated. See Gregory, 843 F.2d at 120. Suit against the defendants in their individual capacities might be allowed to continue if my decision were appealed to the court of appeals, although I conclude the issues heard in the three administrative hearings were inextricably entwined with Edmundson's present claim and therefore bar it. See Judge Weis' comment in Gregory at 121.

from prevailing on an issue he might have but did not assert in the prior action. *See Gregory*, 843 F.2d at 116.

### 3. Similar Cases

The facts here distinguish this case from three similar Third Circuit decisions. In *Gregory*, 843 F.2d 111, a police officer claimed he was fired in retaliation for his political activities. He challenged his dismissal in the court of common pleas, contending the township council dismissed him because its members were biased against him. The court affirmed the discharge, concluding there was no bias. The officer then brought a section 1983 claim in federal court against the township and various individual defendants in their personal and official capacity, alleging he was fired for engaging in protected political activity.

On the basis of claim preclusion, *Gregory* held the federal claims against the township and the individual defendants in their official capacities were essentially identical. The court held the state proceedings barred the federal claims, but treated the claims against the defendants in their individual capacities differently. It held res judicata did not bar the personal capacity claims because the state court judgment only reached the individual defendants in their official capacities. The court then addressed whether issue preclusion barred the personal capacity suits.

*Gregory* held collateral estoppel was not a bar because the state court proceedings had not resolved the dispositive issue in the federal personal capacity claim. *Gregory* noted the state court ruled only that the town's dismissal procedures were not biased. The relevant issue in the federal personal capacity case was whether there was a wrongful discharge for protected political activity.

As I have previously discussed, in this case the threshold issue in the state and federal proceedings is identical: the reason for Edmundson's discharge. This case is therefore different from *Gregory*, and issue preclusion bars Edmundson's federal claims.

The same point distinguishes *Kelley v. TYK Refractories Co.*, 860 F.2d 1188 (3d Cir.1988). In *Kelley*, an American employee,

Roger Kelley, and his former Japanese employer, TYK, disputed whether Kelley quit voluntarily or not. Kelley claimed he refused to engage certain Japanese business practices and to discriminate against employees and deny them various rights under state and federal law. During a meeting to address Kelley's complaints on the matter, Kelley became angry, said, "I'm leaving," and did not return to work for three days. TYK contacted him and said it was accepting his resignation, a position it maintained when Kelley asserted he had not resigned. Kelley filed for unemployment benefits, and while he was appealing a negative decision on whether he had resigned or not, brought a section 1981 claim and several state claims against TYK.

A Pennsylvania unemployment compensation referee decided Kelley did not quit voluntarily and granted him unemployment benefits, but the Unemployment Compensation Review Board reversed. The board held Kelley voluntarily terminated his employment and had not borne the burden of showing cause of a necessitous and compelling nature for doing so. The Commonwealth Court affirmed, and after the Pennsylvania Supreme Court refused to hear Kelley's appeal, TYK claimed the state unemployment proceedings precluded the section 1981 suit. The district court agreed and granted summary judgment.

The Third Circuit reversed. Citing *Odgers v. Commonwealth Unemployment Compensation Board of Review*, 514 Pa. 378, 525 A.2d 359 (1987), Judge Higginbotham noted the policies and rights involved in a section 1981 suit are different from the rights and policies involved in an unemployment benefits proceeding. More specifically, Judge Higginbotham held the unemployment compensation board's decision did not reach the same issue as the section 1981 claim involved and therefore could not have preclusive effect. He wrote:

> With respect to the question of whether there was a necessary and compelling reason for Kelley to voluntarily depart TYK, the [unemployment] Board decided only this precise question: that the referee was incorrect in concluding that a proposed job

transfer, from Chief Executive Officer to Sales Manager, without decrease in salary or perquisites, constituted necessitous and compelling cause for a voluntary termination. *Kelley*, 860 F.2d at 1196.

In short, the court held the issue of whether Kelley had justifiable reasons under the unemployment statute to quit was distinct from the issue of whether TYK discriminated against him. Here, the issue does not involve a state statute with one set of policies and rights and a federal statute that may have different policies and rights, but the reason for the borough's terminating Edmundson's employment. For this reason, *Kelley* does not apply.

More recently, the Third Circuit decided *Bradley v. Pittsburgh Board of Education*, 913 F.2d 1064, 1075 (3d Cir.1990). There, a board of education dismissed a teacher for negligence and persistent violation of school regulations. Because he was outspoken and engaged in controversial teaching methods, the teacher claimed he was fired for exercising his First Amendment rights. He challenged his dismissal before the secretary of education and at the same time brought a section 1983 action in federal court. The secretary found the board's charges supported the dismissal. The board then sought to use the secretary's ruling to bind the federal court in the section 1983 claim. The Third Circuit refused to give the secretary's ruling preclusive effect. Judge Sloviter wrote:

> In this case, the state finding to which we must give preclusive effect did not go to whether the school had an improper motive for firing Bradley; it merely determined that the Board's purported reasons for firing him—negligence and persistent violation of school laws—were both factually supported and legally sufficient. *Mt. Healthy* requires more than a showing that defendants *could* properly terminate an employee. It requires a showing that the employer *would have* terminated the employee in the absence of his protected activity (emphasis in original).

Here, Edmundson was dismissed for insubordination and neglect of duty, according to one tribunal, and insubordination, neglect

of duty, and a poor disciplinary record according to another tribunal. There can be no speculation as in *Bradley* about what the borough might have done, absent protected activity. There was no reference to any purported protected activity and we know exactly what the borough did—it discharged Edmundson.

Having concluded Edmundson may not relitigate the reason for his discharge, I will grant summary judgment on the First Amendment claim in favor of the borough and the individual defendants in their personal and official capacity and against Edmundson.

## B. Due Process

Edmundson also claims his pre-termination hearing before representatives of borough council did not provide a constitutionally adequate due process. He asserts his hearing was flawed because he was presented at the outset with the option to resign or be terminated, he was not presented with specific allegations to refute, and not all of the members of the borough council attended.

*Gniotek v. City of Philadelphia*, 808 F.2d 241 (3d Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987), explains that a constitutional, pre-termination proceeding has "two essential requirements of due-process, notice and an opportunity to respond." *Id.* at 244 (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545–46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985)). *Gniotek* continued:

> Notice is sufficient, 1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and 2) if it is timely under the particular circumstances of the case.

In *Gniotek*, the court held there was no due process violation when the accused received the charges for the first time at the hearing. The court reasoned that even though the employee had little time to consider the actual charges, the charges were clear enough that he could "present his story." In addition, the court observed the

accused had a prompt and complete post-termination hearing.

In *Copeland v. Philadelphia Police Department*, 840 F.2d 1139, 1145 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), the court held there was adequate due process when a hearing inspector brought a "suspension with intent to dismiss" form to the hearing and then presented it to the accused officer at the end of the proceedings. The opinion notes the city's procedure allowed the accused officer to explain his position and concluded: "that [the hearing inspector] did not believe [the accused's] explanation and issued the pre-prepared suspension notice did not violate [the accused's] constitutionally protected right to due process." *Id.*

■ In this case, the minutes of the September 12, 1989, meeting clearly indicate Edmundson had a chance to "present his story." The minutes show the mayor of Kennett Square, the president of the borough council, and a member of the borough council met with Edmundson. The borough representatives informed Edmundson of the charges against him, including the two specific incidents and the general allegations. Edmundson proposed an explanation for his behavior in the two specific instances and argued his general police record was quite good. Nevertheless, the borough representatives presented him with their previously prepared choice of resigning or being terminated. Finally, Edmundson received a full post-termination hearing before the borough's civil service commission.

In light of *Gniotek* and *Copeland,* I find the borough provided Edmundson with sufficient due process during the dismissal proceedings. Edmundson received notice of all charges against him and responded to each of them. As a result, the fact that the borough had considered Edmundson's punishment before the meeting did not create a due process problem. In addition, there was no need for every member of the borough council to be present during the pre-termination hearing. In fact, in *Gniotek,* only a hearing investigator presided over the officer's pre-termination hearing. Edmundson had far greater access to the ultimate decision making body.

## III. CONCLUSION

The defendants have shown they are entitled to summary judgment on both Edmundson's First Amendment and due process claims.